UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DARRYL LEROY OAKS, II,

Plaintiff,

v.                                                     Case No. 6:25-cv-1913-JA-RMN

AIKG, LLC,

Defendant.

## ORDER

Plaintiff, Darryl Leroy Oakes, II, brings this action against Defendant, AIKG, LLC—his former employer—alleging that Defendant unlawfully discriminated against him because of his disability in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, and the Florida Civil Rights Act of 1992, (FCRA), section 760.10, Florida Statutes. (Doc. 24). Defendant moves to dismiss Plaintiff's Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot., Doc. 25). Plaintiff filed a response in opposition. (Doc. 26). Based on the Court's review of the parties' submissions, the motion must be granted in part and denied in part.

## I.    BACKGROUND

From 2021 to 2024, Defendant—a go-kart and amusement arcade business—employed Plaintiff as a part-time arcade attendant. (Second Am.

Compl., Doc. 24, ¶ 10). Plaintiff suffers from multiple disabilities that substantially limit his ability to walk and stand. (*Id.* ¶ 22). As an accommodation, Plaintiff asked Defendant for permission to sit as medically necessary during his shifts. (*Id.* ¶¶ 22–23, 28–29).

Plaintiff alleges that in August 2021, he spoke with Defendant's management about his requested accommodations. (*Id.* ¶ 29). In November 2021, two of Defendant's managers accused Plaintiff of faking his medical condition. (*Id.* ¶ 30). Thereafter, when Defendant denied Plaintiff's request, two managers told Plaintiff that "sitting 'would not look good for the company.'" (*Id.* ¶ 31).

On February 24, 2022, Plaintiff provided Defendant a copy of a doctor's note regarding his medical condition and need for accommodations. (Doc. 24 ¶¶ 25–28). In April 2023, a manager confirmed that Plaintiff's doctor's note was on file and that Defendant "was aware of [Plaintiff's] medical condition and accommodation needs." (*Id.* ¶ 33).

Plaintiff alleges that Defendant's management consistently described him "as a 'great worker,' 'great with people,' and 'great with the team.'" (*Id.* ¶ 35). Plaintiff also alleges that his performance evaluations "never received lower than 'meets expectations,'" although in July 2023 he was documented as having poor job performance because of a negative customer review. (*Id.* ¶¶ 34, 41).

Plaintiff alleges that after requesting accommodations, he "was criticized

and harassed for sitting," a supervisor attempted to send him home early, and he was increasingly scrutinized. (*Id.* ¶¶ 32, 40–42). Plaintiff also alleges that he was constantly monitored by one manager, which he complained about to another manager in February 2023. (*Id.* ¶ 37). In September 2023, a manager issued Plaintiff a "final written warning" for improper phone use in the workplace. (Doc. 24 ¶ 43). In late May 2024, a manager "hinted that Plaintiff would be fired" after the manager reviewed Plaintiff's medical documentation. (*Id.* ¶ 44).

In early June 2024, Plaintiff "was written up" by Defendant's manager and suspended for playing a game and having his phone out. (*Id.* ¶¶ 45–46). Based on this incident, a manager informed Plaintiff that it would be his 'last day of work.'" (*Id.* ¶ 46). Several days later, another manager met with Plaintiff about his purported policy violations, but when asked the manager refused to identify the specific policies Plaintiff violated. (*Id.* ¶ 47). On July 9, 2024, human resources formally notified Plaintiff that he was terminated. (*Id.* ¶ 49).

Plaintiff alleges that he filed a dual charge with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) on June 7, 2024, claiming disability discrimination and retaliation. (Doc. 24 ¶ 18). The EEOC issued Plaintiff a Notice of Right to Sue on August 18, 2025, (*Id.* ¶ 19), and Plaintiff filed this lawsuit on October 2, 2025, (Doc. 1). He filed an Amended Complaint on October 20, 2025, (Doc. 10),

3

which the Court dismissed without prejudice upon Defendant's motion as a shotgun pleading. (*See* Order, Doc. 23).

On February 4, 2026, Plaintiff filed his Second Amended Complaint. (Doc. 24). Defendant now moves to dismiss the Second Amended Complaint for failure to plead plausible claims and failure to timely exhaust administrative remedies. (Doc. 25).

## II.    LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

4

## III.  DISCUSSION

Defendant argues that the Amended Complaint is due to be dismissed because it fails to state a claim upon which relief can be granted and because Plaintiff did not timely file an administrative charge. (Doc. 25).

### A.    Failure to Accommodate (Counts I and IV)

Defendant argues that Counts I and IV—Plaintiff's failure-to-accommodate claims—should be dismissed because Plaintiff failed to timely exhaust his administrative remedies.

Under the ADA and FCRA,[1] a plaintiff asserting disability discrimination or retaliation must first exhaust administrative remedies by filing an administrative charge with the EEOC and FCHR, which initiates an EEOC investigation of the complaint.[2] *See Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001). There are time limits for filing the charge: under the ADA, the charge must be filed within 300 days of the alleged unlawful employment practice, and under the FCRA, it must be filed within 365 days of the alleged unlawful employment practice. *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002) (citing § 760.11(1), Fla. Stat.).

---

[1] Disability actions under the FCRA are analyzed using the ADA framework. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000).

[2] A charge filed with the EEOC is considered a dual filing with the FCHR. *See Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 893 (Fla. 2002).

A failure to file a charge within these deadlines results in the ADA and FCRA claims being time-barred for failure to exhaust administrative remedies.

In the Second Amended Complaint, Plaintiff alleges that he filed an EEOC charge on June 7, 2024—meaning that administrative prerequisites to suit could be satisfied for unlawful employment practices that occurred on or after June 8, 2023. (Doc. 24 ¶ 18). But Defendant refers to the EEOC charge attached to its previous motion to dismiss, which indicates that Plaintiff signed it on December 12, 2024—meaning that the only unlawful employment practices that could be administratively exhausted are those that occurred on or after December 13, 2023. (Doc. 12-1 at 2). In his response, Plaintiff does not address the EEOC charge provided by Defendant and does not otherwise comment on whether he signed the EEOC charge on December 12, 2024. Instead, Plaintiff baldly reasserts his contention that the EEOC charge was filed in June 2024 without further explanation or support. (Doc. 26 at 3). Because Plaintiff's EEOC charge provided by Defendant "is central to" Plaintiff's claim and its authenticity is not challenged, the Court can consider the EEOC charge without converting the at-issue motion into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Based on a December 2024 filing date, Defendant argues that "any unlawful employment practice predating December 13, 2023 (for the FCRA) or February 16, 2024 (for the ADA) is time-barred." (Doc. 25 at 8). Plaintiff alleges

6

that his request for reasonable accommodations was denied no later than April 22, 2023, when he confirmed that Defendant had his doctor's note "on file" and "that Defendant was aware of [his] medical condition and accommodation needs." (Doc. 24 ¶ 33). Thus, Defendant's denial of Plaintiff's accommodations request was not within the scope of the EEOC charge.

Plaintiff asserts that his claims based on denial of reasonable accommodations are timely under the continuing violation doctrine. However, each denial of a request for reasonable accommodations is generally treated as a discrete event, not a continuing violation. *See Abram v. Fulton Cnty. Gov't,* 598 F. App'x 672, 676 (11th Cir. 2015) (per curiam)[3] (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 105, 114 (2002)). Plaintiff has not plausibly alleged that Defendant's denials of his requests for accommodations constitute a continuing violation.

Plaintiff fails to plausibly allege that he timely exhausted his administrative remedies for his claims of denials of reasonable accommodations. Accordingly, the motion to dismiss will be granted as to Counts I and IV.

**B.    Disability Discrimination (Counts II and V)**

In his disability-discrimination claims (Counts II and V), Plaintiff alleges

---

[3] In the Eleventh Circuit, "unpublished decisions . . . bind no one," *Ray v. McCullough Payne & Haan, LLC,* 838 F.3d 1107, 1109 (11th Cir. 2016), but "may be cited as persuasive authority," 11th Cir. R. 36-2.

7

that he was subjected to adverse employment actions including: (a) failure to promote, (b) reduction of his work hours, (c) escalating discipline and a "final written warning," (d) suspension, and (e) termination. (Doc. 24 ¶ 67). Defendant argues that none of these alleged adverse employment actions provide a basis to state a claim for disability discrimination.

### 1.    Failure to Promote

Defendant argues that to the extent Plaintiff's claims of disability discrimination are based on failure to promote, the claims have not been administratively exhausted because they were not included in the charge. In response, Plaintiff contends that although he did not expressly allege failure to promote in his EEOC charge, the allegation can reasonably be expected to grow out of the charge. (Doc. 26 at 7–8); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466–67 (5th Cir. 1970).[4]

Plaintiff's EEOC charge contains no allegations relating to Plaintiff's work performance, promotion history, or the promotion of Defendant's other employees. *Compare Vinson v. Koch Foods of Ala., LLC*, No. 2:12-cv-1088, 2013 WL 5441969, at *10 (M.D. Ala. Sept. 27, 2013) (granting motion to dismiss when "EEOC charge [made] no mention of discriminatory pay, failure to promote, or

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

8

retaliation, but instead focus[ed] on [a] . . . disciplinary action and its consequences"), *with Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1346 (11th Cir. 2022) (finding that retaliation claim reasonably grew out of charge of discrimination). Plaintiff's EEOC charge does not "mention promotion or any facts relating to promotion" and "a failure to promote claim could not reasonably be expected to grow out of the charge of discrimination Plaintiff originally filed with the EEOC." *Scott v. Kindred Hosps. Ltd. P'ship*, No. 1:06-cv-76, 2006 WL 2523093, at *3 (N.D. Ga. Aug. 28, 2006).

Accordingly, Counts II and V must be dismissed for lack of administrative exhaustion insofar as they are grounded in an alleged failure to promote.

### 2.    Reduction of Work Hours and Escalating Discipline

Defendant also argues that based on the EEOC charge's filing date of December 12, 2024, "any alleged unlawful employment practice predating December 13, 2023 (for the FCRA) or February 16, 2024 (for the ADA) is time-barred." (Doc. 25 at 8). Plaintiff alleges that Defendant attempted to reduce his work hours on May 15, 2023, and that he received a "final written warning" on September 27, 2023. (Doc. 24 ¶¶ 39–40, 43). Based on the dates provided in the complaint for these alleged unlawful employment practices, the Court agrees that Plaintiff's claims are barred to the extent they are based on reduction in work hours, subjection to escalating discipline, and the issuance of a "final written warning."

Accordingly, Counts II and V must be dismissed as time-barred to the limited extent that they are grounded in these adverse employment actions.

### 3.    Suspension and Termination

The remaining allegations that underly Plaintiff's disability-discrimination claims relate to suspension and termination. (Doc. 24 ¶¶ 44–49). Defendant argues that Plaintiff has not adequately alleged that he suffered an adverse action due to intentional discrimination. The Court disagrees.

The Amended Complaint contains sufficient factual matter, taken as true, to state a claim for disability discrimination. Plaintiff alleges that in the weeks before his suspension and ultimate termination, management reviewed his doctor's note and confirmed his medical documentation. (*Id.* ¶ 44). After reviewing Plaintiff's medical documentation, a manager suggested that Plaintiff would be fired despite acknowledgment from other managers that Plaintiff was a "great worker." (*Id.*). The day Plaintiff was suspended for alleged policy violations, he was told by management that it "would be his 'last day of work,'" indicating that Plaintiff's termination was predetermined. (*Id.* ¶ 46). And when Plaintiff met to discuss those policy violations with management several days after his suspension, he was not shown the specific policies that he had allegedly violated. (*Id.* ¶ 47). Thus, Plaintiff has adequately alleged that his suspension and termination were because of his disability. *See Giannerini v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:22-cv-2075, 2025 WL 2918880, at *3 (M.D. Fla.

Jan. 29, 2025) (noting that a predetermined termination decision could support discriminatory intent).

Accordingly, the motion to dismiss Plaintiff's disability discrimination claims (Counts II and V) must be denied to the limited extent the claims are premised on his suspension and termination.

## C.    Retaliation (Counts III and VI)

Finally, Defendant argues that Counts III and VI, Plaintiff's retaliation claims, should be dismissed because they are not plausible as a matter of law.

To state a claim for retaliation under the ADA and FCRA, Plaintiff must allege that "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (collecting cases). For the third element, Plaintiff must allege that "(1) the decisionmakers knew of his protected activity; and (2) the protected activity and adverse action were not wholly unrelated." *Hughes v. Nestor*, No. 8:25-cv-02506, 2026 WL 592619, at *7 (M.D. Fla. Mar. 3, 2026) (citing *Harris v. Fla. Agency for Health Care Admin.*, 611 F. App'x 949, 951 (11th Cir. 2015), and *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002). "Generally, when an adverse action closely follows protected activity . . . 'temporal proximity' alone can be enough to raise a factual dispute as to causation." *Id.* (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d

11

1286, 1298 (11th Cir. 2006)). "But if there is no additional evidence linking the two, a gap of about three months between the protected conduct and the adverse action is too long, by itself, to support a reasonable inference of causation." *Id.* (citing *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)).

In this case, Plaintiff relies on his request for accommodations as the protected activity, and the only potentially actionable adverse actions are Plaintiff's suspension and termination. Temporal proximity does not give rise to an inference of causal connection here because Plaintiff alleges that he requested reasonable accommodations over a year before his suspension and termination. And Plaintiff alleges no other facts to support a causal connection—Plaintiff does not allege that he was suspended and terminated by the managers that accused him of faking injury, made hostile remarks, or subjected him to escalating discipline. (Doc. 24 ¶ 104). And he does not allege that the managers who suspended and terminated him referenced his accommodation request.

Accordingly, Counts III and VI must be dismissed because they are not plausible as a matter of law.

## IV. CONCLUSION

Defendant's motion to dismiss (Doc. 25) is **GRANTED in part and DENIED in part**. Counts I, III, IV, and VI are **DISMISSED with prejudice**. The disability-discrimination claims in Counts II and V based on failure-to-

12

promote, reduction of work hours, and escalating discipline are also **DISMISSED with prejudice**. However, the motion is **DENIED** with regard to the disability-discrimination claims in Counts II and V based on suspension and termination. Defendant may file an answer on or before **June 11, 2026**.

**DONE** and **ORDERED** in Orlando, Florida, on May 21st, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

13